I'm going to address some of the concerns that were expressed in the last argument. In judgment, I do believe that this Court has the power to fix a blasphemy. I don't think blasphemy was found in the silence. Now, I do understand that this Court can only review books, cannot overhear blasphemy, but it can certainly distinguish it. And in this case, when Ms. Cortes was before the immigration court in Arizona, she was asked by the immigration judge at her initial hearing, do you understand that you can be deported for that conviction when she was being read her rights pursuant to the notice to appear? She said, I do now. Because Ms. Cortes did not understand that she could be deported based on her conviction. And that's a result of the way our system is established. We require our criminal defense attorneys in California to advise criminal defendants who are immigrants to enter pleas that are not deportable. If they don't, then that is ineffective assistance of counsel on behalf of their criminal defense attorney. So we've set up a system here where the person will enter such a plea. Now, Velasco Medina found, and I didn't have a better term to describe it, what I believe is almost constructive notice of a retroactive change in law. But in this case, that notice is rebutted by the fact that Ms. Cortes clearly did not know. We have a declaration in the record stating that she did not know. Now, below the court was generous enough to give us an opportunity to supplement the record. And the district court, Judge Wanger, was more concerned about whether or not she relied on 212C. And she really didn't rely on 212C expressly because she had what Leon Paz called two bulwarks. She was not deportable in that she didn't have to concern herself with 212C. But it was available to her if, for some reason, the plea did turn out to be a deportable offense. So I do think that Velasco Medina can be distinguished from this case based on express reliance on the fact that the respondent is not deportable because that rebuts Velasco Medina's assumption that criminal defendants were on notice of some prospective change in the law. I also believe, Your Honors, that we do have a due process argument if Velasco Medina is not distinguished on this grounds. Because in this case, what you have is stripping away completely legal permanent resident status from someone. And when this person actually relied on the law at that time expressly in our system, as St. Cyr noted, as Magana Pizano noted, that we require immigrants to do that and we encourage attorneys to make sure that they accomplish that. And in this case, what happened was that we stripped the person of their right to reside in the United States. And I don't see a rational basis for that at all. Mousetrapping immigrants is not a rational basis. You can't invite them to enter pleas that promotes a criminal justice system that is really supported by 90 percent of our criminal convictions as a result of pleas and the Supreme Court has acknowledged that is a very important policy to support. And on the other hand, then you mousetrap these immigrants by saying, well, now you're deportable and you're deportable without relief. There's no precedent for such an extreme action where you strip someone of legal permanent resident status based on a retroactive application of the law. So I do believe that there is a serious due process concern here. Judge Pergerson did articulate it beautifully in Ubaldo, and I think we have an added dimension here where the person expressly relied on the fact that she was not deportable. Finally, Your Honors, there is, I think part of what animates the Court's decisions in these other cases is the equal protection concern. Because the way that the law, if we don't find that Ms. Cordes is eligible for 212C relief, then we have a problem where we've allowed people who are less desirable, who were deportable at the time, to seek 212C relief, and we are not allowing Ms. Cordes to do the same. So I think that does raise due process concerns. And I, if the U.S. Court doesn't have any questions for me, I'll reserve the balance of my time for rebuttal. Ms. Schoonholt. May it please the Court. I'm James Schoonholt, representing the Respondent of Belize in this case. Your Honor, I believe stated it correctly in the earlier proceeding argument, that the Court is bound by Velasco-Medina. This case is on all fours of Velasco-Medina. This case involved an alien who committed a crime, who pled guilty after Edpo and its changes in 212C were passed. Well, that's a due process argument. His main claim is an equal protection argument. Your Honor, his equal protection argument lacks merit entirely. And I refer the Court to St. Cyr particularly, although it did not directly address the equal protection question. It addressed the scope of Congress's repeal of 212C. And counsel argues that that repeal should not be applied to Ms. Cordes on equal protection grounds. But the St. Cyr decision relied on the fact that Congress did not intend to retroactively apply the repeal of 212C for a small portion of aliens, that is, those aliens who relied on the availability of 212C in pleading guilty and were deportable, like St. Cyr, like the alien in Ubaldo, like the alien in Lopez Paz. They, the reliance noted in St. Cyr was on the availability of 212C relief. The Court saw to it that an alien could apply, not that they would be granted relief by any means, but they could apply, where the quid pro quo was for, of a guilty plea, was for eligibility for 212C. It is that distinction that puts Ms. Cordes in a different position than aliens who pleaded guilty to crimes that rendered them deportable. They had a reliance interest. They are in a different position. Their quid pro quo was I will plead guilty, according to St. Cyr, in return for the benefit of being able to seek 212C. Ms. Cordes is not in that position because that, her offense, did not render her deportable. Now, this brings me back to Velasco, Medina. The alien in Velasco, Medina, could not have relied on 212C because he was not deportable. And the panel of this Court held that the change rendered by AEDPA in saying that aggravated felons will not be eligible for a 212C waiver was sufficient notice, that in the event that Congress did change the law, which they are certainly entitled to do, that is sufficient notice to distinguish that situation, and this situation is no different, from St. Cyr. Your Honor, I did not prepare the brief for Respondent, so I can't answer your question as to why. In any way affect this case, because in this Court's decision in Aragon Ione, I believe it's pronounced, the discussion as to how rational, in fact, Congress's actions were, shows that this is not an irrational. Well, why are people with two felonies better off than people with one felony? That takes us back to St. Cyr, because they, when pleading guilty, could reasonably rely on the possibility of a 212C application. Now, I would like to refer to our brief. The – I think you're talking of the crimes involving moral turpitude. Of course, this individual, Ms. Cordes, never – one felony made no difference. Those statutes, both before IRERA and AEDPA and after, apply to aliens who committed crimes involving moral turpitude within 5 years after entry. So the – whether it was a crime involving moral turpitude or not really has no bearing on this case at all. Ms. Cordes. The legitimate equal protection concern is that it doesn't make obvious sense that someone who commits one crime of moral turpitude cannot get – is not eligible for 212C relief, whereas somebody who commits two crimes is. It appears to be unsensible because two crimes should be worse than one. I assume that the rational purpose lurking behind legislation of that sort is that the person who is convicted of only one crime of moral turpitude wasn't deportable and therefore had no need of discretionary relief, whereas somebody who commits two crimes is and therefore needs it. Is that the rational purpose? That's the rational purpose, Your Honor, based essentially on the rationale of St. Cyr, that the guilty plea causes or raises the reliance interest that is absent for an alien who is not deportable at the time of the plea. That is a relatively narrow holding case. I'm not focusing on St. Cyr. I'm focusing on a totally different – it may be as a result of the Supreme Court's decision, but anyway, it's now a patently irrational scheme. No, Your Honor. Someone punished for – punished worse for one crime than for two. Well, I – Let me say no, Your Honor. Please tell me why two isn't worse than one. No. I'm not going to say that. I'm going to say that Congress, in enacting the provision in ARERA making the aggravated felony definition, is rational. That as this Court ruled in Aragon, Congress can determine that aliens who have committed crimes in this country should be removed. The change worked by ARERA was simply a line-drawing change, changing the period of five years, as is relevant to this case, for an aggravated felony to one year. But that was a result of a decision of the Supreme Court. The scheme appears irrational. Shouldn't we treat it as irrational? Your Honor, we cannot agree that it is irrational by any means. What the Supreme Court did, and I – Please just tell me why it's not irrational now. Somebody help me out. What is it? That someone who has committed one crime suffers worse consequences than one who has committed two crimes. Your Honor, we absolutely have to go back to St. Cyr in its interpretation of the statute, based on what the alien pleading guilty anticipate, what vested rights and what settled expectation they have. That was the only exception. Otherwise – No, no, no. Yes. His question is not about the application of St. Cyr. His question is whether it makes sense for Congress to apparently penalize someone who has got only one conviction for moral turpitude more than it apparently penalizes someone who has got two convictions for moral turpitude by not making the former eligible for discretionary relief that is available to the latter. Now, could you answer that question? Because Congress reasonably determined that it did not want criminal aliens to be eligible for a waiver of deportability. It is reasonable to determine that it simply withdrew the authority to offer a 212C waiver to aliens in ARERA. It repealed the statute entirely. There was no statute there at the time of these deportation proceedings. That is where your failure to prepare on Tapio Akuna cuts in, because there we say when Congress violates the Equal Protection Clause, irrationally, we disregard the legislation. You can't be – you can't be irrational in treating long-term permanent residents. Your Honor, we utterly disagree with the premise that it is irrational. You haven't explained it to me. You've given me a lot of talk about the case that I didn't ask you about. But I ask you a very simple question. Judge Weimer repeated it. Why is it rational to punish one more than two? Well, Your Honor, the scheme set forth by Congress offers no difference at all between one and two when read. But it's become one. That is why I referred to St. Cyr, and I can't withdraw from that. That is, there is a limit to the repeal of 212C. Worked by St. Cyr, Congress or the Supreme Court determined that for that class of aliens who had a settled expectation of applying for a discretionary waiver, for that class of aliens, Congress did not, under traditional retroactivity analysis, did not intend – and this is a statutory interpretation. This is not a constitutional interpretation in St. Cyr at all. I must stress that, that Congress intended for that class of aliens not to be rendered ineligible, only for that class of aliens who relied, had a settled expectation of a 212C waiver. That expectation is what renders the equal protection argument inapplicable here because Ms. Cordes did not have that expectation. It's a subjective test? I'm sorry. You say expectation. That's a subjective test. Equal protection does not depend upon subjective tests. It's subjective tests. Oh, I understand. I understand. And, no, I don't think that it is necessarily a subjective test. A reasonable settled expectation, I think, was probably what was intended because I – but there could have been none here. Subjective or objective, that is, there is no evidence that Ms. Cordes relied on the availability of a 212C waiver at all because she was not subject to deportation or removal at the time. She was in that class of aliens who did not have an – could not have had an objective – objectively reasonable expectation, nor did she present any basis for a subjective expectation. Under either view, her claim must fail. The due process, I believe, unfairness claim cannot stand in the context of the St. Cyr. St. Cyr plainly said that in its statutory interpretation that the – and as did Congress, that the aggravated felony definition is retroactive. I believe that this Court in Aragon I own plainly upheld that conclusion as rational. Now, in the face of consequences, the consequences here is that in combination with the repeal, of course, of 212C, that Ms. Cordes was not eligible for a 212C waiver. In Gubaldo Medina, which was issued after the immigration judge decided this case but before the Board, the Board said in these – or this Court said in these circumstances the alien remains ineligible for a 212C waiver and cannot benefit from St. Cyr. The district court relied on exactly the same thing. This Court's decision in Gubaldo Medina, St. Cyr does not apply here because there was not a settled expectation. An alien who is deportable, regardless of two crimes or one, for some basis, whether it was a burglary or a drug offense, if there was an expectation, a reasonable settled expectation of 212C, the repeal of 212C will not apply under St. Cyr. But there was not a reasonable expectation. That is what this Court has already decided in Gubaldo and should be followed here, as did the district court. The district court found that there was no equal protection violation here because Ms. Cortes is not in the same situation as other aliens who rely on 212C. That is why the equal protection claim must fail. It is not irrational to repeal 212C. It is not irrational to say that that repeal applies to aliens who have had no reliance interest on the availability of 212C. As Ms. Cortes has not had a reliance interest, a vested interest, a settled expectation for one day in this country, that is why the decision of the district court should be upheld. If the Court has no further questions. Okay. Thank you. Mr. Sacco. Thank you, Your Honor. I believe that this Court knows how to distinguish Velasco Medina. When Velasco Medina was first decided, it rested almost primarily on what Mr. Hunnold argues, that you can't have a reliance interest unless you are deportable. This Court has chipped away at that and has really jettisoned that dimension of Velasco Medina. All that is left of Velasco Medina is this notion of notice that I frankly believe Velasco Medina sort of invented. I couldn't find any precedent for finding notice of a potential change in the law. However, again, I would encourage the Court to at least examine whether or not that constructive notice is rebutted by Ms. Cortes' express reliance based on what is required in the State of California, which Magana Pizano recognizes and what the Supreme Court recognizes in St. Cyr. And with respect to the equal protection argument, Your Honors, I believe that the Court has crystallized the issue that the important thing to examine is whether it's fair to or advances our desire to keep our country safe or to deport someone who only has — who is less of a danger or has less of a criminal record as opposed to someone who has more of a criminal record. They should be — they should both have an opportunity. Sotomayor Before Edpo, or before Arreo came into the picture, there was obviously a rational purpose for it, because somebody who committed two crimes of moral turpitude was deportable, and therefore you gave the opportunity for relief from that. Yes, Your Honor. Whereas that wasn't true of somebody who had only been convicted of one crime. That's correct, Your Honor. They weren't deportable, didn't need it. After the two were passed, they were reclassified so that they're both treated the same. Each is treated as an aggravated felony. Neither has relief available. So there's no disparate treatment. Right? Afterwards. Well, Your Honor, that — Afterwards. Yes, afterwards. That's correct. So what you're talking about is a situation more or less caught in the middle, and that is an absolute consequence of sincere. So how can that be irrational? Your Honors, I actually believe that sincere is being read far, far too narrowly. And there's a lot of — in preparation for this, I started looking at a lot of case law, and there's a lot of different settings where the courts have analyzed throughout the United States 212C in its application. And I think when we're talking about any black-letter rule in sincere, to me the most obvious one is the conclusion of the majority's decision, which says 212C remains available for aliens who entered police and at the time of their pleas were eligible for relief. Now, I understand — Which he was not. Yes, Your Honors. But then we have to supplement that with Leon Paz, which — But he was in the same position as sincere. But he wasn't a portable, Your Honor, at all. And so I'm saying that — But he pled before EDPA. Yes, Your Honor. But I'm saying that the express reliance that we need — sorry, that the reliance on 212C relief is no longer a requirement in this circuit to establish eligibility for 212C relief or to warrant eligibility for 212C relief. It is not a requirement. Really, all we're left with, with Velasco, Medina, is hanging on the basis of constructive notice of a change in law. And if you — and then I — now, I understand this Court can't — That's going way off the equal protection point. Yes, Your Honor, it is. Back of why Velasco is wrong. Yes. Did you want to answer that question? I'm sorry, Your Honor. I lost it. Again, Your Honor, if — I need the question restated, Your Honor. I'm sorry. Well, in the situation in which your client is faced, why isn't any disparity a direct consequence of sincere, just to be simple about it? That's not rational. Well, sincere, Your Honor, interpreted this as allowing for — would allow for Ms. Cordes to seek 212C relief the way I read it, sincere, because the black-letter law of sincere is very simple. You're not answering Judge Reimer's question. Yes. That is the irrationality. Read it differently. Admit it. It could be — the irrationality comes from the Supreme Court's decision. It — The irrationality. Yes, because they gave 212C relief back. What do you say then? If not as a result of an act of Congress, but as a result of a decision of the Supreme Court, the legislative scheme is irrational. That's the situation we have. Yes, Your Honor. Because the Supreme Court was worried that there were potential constitutional issues, so the Supreme Court first examined whether it was clear or not that 212C relief. Congress wanted to repeal 212C for everyone before IRA-IRA. They said it was not clear, and therefore they examined the issue of retroactive effect. And then I have to go back to the issue. In our case, I believe there's a very big retroactive effect for Ms. Cordes because it changes her from a non-deportable alien who's lived in the United States for three decades into a deportable alien with no relief. That is a retroactive effect. No. You're missing the point. I think other counsel did. The real problem for the government is the unequal application of the law that results from a Supreme Court decision. Yes, Your Honor. There's no point arguing the decision of Velasco. Just in this case, to apply the statute, it's an irrational statutory scheme. Yes, Your Honor. We could say, well, that violates equal protection. The reasons it became irrational is sort of beyond Congress's anticipation, but there it is. It's a crazy scheme. What should we imply it? Yes, Your Honor. I agree. It's not rational. And, Your Honor, with respect to our due process argument that Judge Ferguson articulated in his concurring opinion, Aragon does not address due process. What Aragon does is recognize the obvious, that Congress wanted to retroactively redefine aggravated felony. However, it doesn't address the constitutional consequences of that. And I think that if we examine the specific facts of this case, there is no rational basis for the retroactive redefining of misquotas from a legal permanent resident to someone who is deportable and who can never return to the United States. Thank you, Your Honor. Okay. Thank you, counsel. Both of you. The matter just argued will be submitted, and the Court will take a brief recess before hearing the last two matters on the calendar. Thank you. Thank you. All rise. to the floor.   Thank you. Please. Okay. Thank you. That's out of this one. Out of this one? Yeah. Yes. Thank you. No problem. Okay. No problem. No problem. Thank you class. Thank you. Thank you. Thank you.
judges: Ferguson, Noonan, Rymer